C. G. SHULL, Jr., Ruby Mae Shull, Phoebe Jo Shull Jones, and J. V. Jones, her husband, Plaintiffs in Error,

v.

Hal WELCH, Defendant in Error.

No. 40187.

Supreme Court of Oklahoma.

Nov. 12, 1963.

As Corrected Dec. 16, 1963.

Rehearing Denied Dec. 17, 1963.

O. A. Brewer, Hugo, for plaintiffs in error.

Joe Stamper, Antlers, for defendant in error.

IRWIN, Justice.

Hal Welch commenced an action against C. G. Shull, Jr., and his wife, and Phoebe Jo Shull Jones and her husband, for specific performance of a contract for sale of 27.5 acres of land in Choctaw County, Oklahoma. Judgment was rendered in favor of Hal Welch and after defendants' motion for a new trial was overruled, defendants perfected this appeal. The parties will be referred to as they appeared in the trial court or by name.

The record discloses that C. G. Shull, Jr., acted in his individual capacity and as agent for the other defendants; that after an agreement had been made for the sale by defendants and purchase by Welch of the land involved, a warranty deed, executed

by the defendants, and twelve promissory notes, totaling $2750.00 and executed by Welch, were placed in escrow in a bank at Hugo, with written instructions containing the following language:

"You are hereby authorized and directed by the undersigned to make collections of said notes as they fall due and deposit the proceeds thereof in your bank to the credit of Shull and Jones. Upon full payment of said notes, with interest thereon, by the makers thereof, you are hereby authorized to deliver to the said Hal Welch, the aforesaid deed. In case of default in the payment of said notes or any of them according to the terms and tenor thereof, you are hereby authorized to deliver the said deed to the said Charles G. Shull, Jr., and to deliver to the said Hal Welch any and all unpaid notes of said series of notes. In case of default it is further understood and agreed that any improvement made upon said real estate by the said Hal Welch are to inure to the benefit of the said Charles G. Shull, Jr., and any and all money paid by the said Hal Welch to be the property of the said Charles C. Shull, Jr., as liquidated damages for the breach of this contract, by making default in the payment of said notes. Witness our hands this, the 25th day of July, 1952."

Welch immediately removed a fence between the purchased property and property already owned by him to the south. Shull owned other property to the north and this left the south side of the Shull property unfenced and his cattle were free to move onto the Welch property. Shortly thereafter, Shull and Welch agreed that Welch would have the property line established by a surveyor and Shull would build a fence, the cost of each operation to be divided equally between the two. Welch had the property line established and paid a fee of $50.00 to the surveyor but Shull did not build the fence.

On the night of June 21, 1953, the building in which Welch had his law office was destroyed by fire and his office, together with all furniture, fixtures and records were totally destroyed. At that time, Welch had paid $900.00, or nine notes, and within two or three days of the fire, two remaining notes each in the sum of $100.00 were due and another note in the sum of $1650.00 was due in approximately 30 days. After the fire Shull voluntarily extended the time of payment of the remaining notes until December 31, 1953, and did not seek any payments from Welch during the interim.

In the early part of November, 1953, Shull and Welch discussed the sale and on November 7, Welch wrote a letter to Shull, the pertinent parts of which are as follows:

"After thinking over our conversation regarding the 27.5 acres I have under contract of purchase, I have decided that if you were serious about allowing me to let the land come back to you and your sister, and returning to me the amount paid, under the contract, I will do so under the following agreement:

"1. I will be refunded all sums paid, including interest (less the $50.00 abstract bill you agreed to pay Ray)

"2. The contract and deed will be withdrawn from escrow and returned to you and your sister.

\* \* \*

"Naturally, I will want to know immediately about this, as I am presently making arrangements to get the balance of the purchase price on the 27.5 acres, so as to be able to pay same this year, as we agreed. So, if you will advise me at once, of your desires in the matter, I will appreciate it."

At about this time Shull's daughter became seriously ill and was hospitalized outside the state and Shull spent most of his time out of Hugo until January 6, 1954. Shull did not maintain an office in Hugo and when he did return to Hugo, he went directly to his home. Welch heard nothing from Shull and in December, 1953, he secured a base abstract to the property at a cost of $72.00.

On January 6, 1954, Shull returned to Hugo and immediately thereafter and without any notice to and without the consent of Welch, was permitted to withdraw the deed from escrow and the same was destroyed. Shortly thereafter, Welch contacted Shull for the purpose of settling all the matters that had arisen after the contract was entered into, so he could know the amount of money due to secure the deed. He was told the contract had been terminated and the deed withdrawn from escrow and destroyed.

Defendants contend that Welch breached the terms of the contract and thereafter, while still in default, acquiesced in the abandonment of the contract and forfeited all future benefits thereunder; and that payment of the notes was extended to December 31, 1953, and since payment was not made, defendants were entitled to the payments made by Welch as liquidated damages under the terms of the contract.

To sustain the contention that Welch abandoned the contract, defendants rely on certain events which transpired after November 7, 1953, when the parties discussed terminating the contract and making a settlement, and after January, 1954, when Shull withdrew the warranty deed from escrow.

One of these circumstances is a stipulation signed by the parties and a third person concerning the reversionary rights to 39.65 acres of land abandoned by a railroad company adjoining the land in controversy. We can find nothing in this stipulation which is inconsistent with an agreement between the parties that the contract would be terminated under certain conditions, if such an agreement were made, or inconsistent with defendants' contention that Welch had abandoned the contract, if in fact he had abandoned it.

One of the principal facts relied upon by defendants is a letter from Welch to Shull, dated April 23, 1955, which provided:

"I assume, since I never heard any more from you that it is your desire to treat my purchase agreemnt on the 27.5 acres as abandoned. I have concluded to make no protest on this score, if that is the way you want it. However, my note has never been returned to me by the bank, and I should have it."

In reply to the letter Shull wrote to Welch and stated, "You state in your recent letter that you did not receive the unpaid notes. These notes are not and never have been in my possession. This letter is to advise that this transaction was not completed and that I have no recourse whatever as to the unpaid notes."

At the time of trial and prior thereto, Shull was in the employment of the bank, which had been and was then in possession of Welch's notes (these notes were in the face amount totaling $1850 and Shull had access to them). By inference the evidence shows that the bank would not have released the notes to Welch unless so directed by Shull. The evidence also reflects clearly after Shull's withdrawal of the deed from escrow that Welch looked to and requested the return of his notes from Shull. Shull neither advised Welch where the notes were nor offered to help him locate them, nor authorized the bank to release them.

Without question, Welch and Shull discussed terminating the contract and had entered into a tentative agreement terminating the same prior to the time the three notes were due on December 31, 1953. However, from the evidence, we can only conclude that the parties never had a meeting of the minds as to the terms of the termination. It seems that Welch was willing to terminate the contract if he were reimbursed the $900.00 he had paid on the purchase price; the cost of the survey and abstract; and if the unpaid notes were returned to him. On the other hand, defendants seem to take the position that Welch had abandoned the contract and under the terms of the escrow agreement they were entitled to all the sums paid by Welch as liquidated damages for breach of contract.

■ This is an equitable action for the specific performance of a contract and not an action to recover any money paid on the purchase contract. Welch seeks specific performance; defendants seek to have the contract declared abandoned by Welch. In Bowen v. Freeark, Okl., 370 P.2d 546, we held:

"Specific performance of a contract is not a matter of right, but a question of equity, and the application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances in each case.

"In an equitable action, the presumption is in favor of the correctness of the finding of the trial court, and it will not be set aside unless against the clear weight of the evidence."

■ Applying the above principles of law to the facts in the case at bar we find: Defendants extended the time to pay the delinquent notes to December 31, 1953; Welch had made previous payments on notes after their due date (from 2 days to over a month late) without objections on the part of defendants; Shull withdrew the deed from escrow without notice to and without the consent of Welch; Defendants did not repay to Welch the $900.00 paid on the purchase price or the cost of the survey or cost of the abstracts, nor did they ever offer to make such payments; Defendants did not return the unpaid notes to Welch; Welch testified that at all times after his letter of November 7, 1953, to Shull, he was ready, willing and able to pay the balance of the purchase price and would have paid the same had he known the exact amount; and there is nothing in the evidence disclosing a change in condition which would make it inequitable to decree specific performance. The trial court specifically found that Welch and defendants have been in joint possession of the property.

■ If Welch had agreed to terminate the contract without qualifications, or abandoned the contract, he would be estopped from asserting his legal rights under its terms. See Bowen v. Freeark, supra. However, there inheres in the general finding of the trial court that Welch did not agree to the termination of the contract without qualifications, nor did he abandon the contract. These inherent findings are not against the clear weight of the evidence. Since specific performance of a contract is not a matter of right, but a question of equity, addressed to the sound legal discretion of the trial court, and the trial court has resolved the question of equity in favor of Welch, the judgment of the trial court must be affirmed.

Defendants cite no authorities nor set forth any argument why the exclusion of certain evidence offered by them, and objected to by Welch, constitutes reversible error. We therefore find it unnecessary to consider this contention.

Judgment affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, and BERRY, JJ., concur.