Margery J. McCORMICK and Paul F.
Robison, Appellants,

v.

David E. GROVE and Madeline F. Grove,
husband and wife, et al., Appellees.

No. 1518.

Supreme Court of Alaska.

April 17, 1972.

Richard F. Lytle, of Houston & Lytle, Anchorage, for appellants.

Warren C. Colver, Anchorage, for appellees.

Before BONEY, C. J., RABINOWITZ, CONNOR, ERWIN and BOOCHEVER, Justices.

## OPINION

CONNOR, Justice.

The vendors under a contract for the sale of land are appealing a judgment of the superior court which granted to the purchasers specific performance of the contract.

On January 28, 1963, appellants Margery McCormick and Paul Robison agreed to sell appellees David and Madeline Grove an unimproved lot on International Airport Road near Anchorage.[1] The contract price was $17,000, with a $1,000 down payment and the balance to be paid in monthly installments of $200. The contract contained standard forfeiture and "time is of

---

1. On May 10, 1963, the Groves assigned one-half of their interest in the contract to Robert and Margaret Prestwood.

the essence" provisions. The contract and a warranty deed were placed in escrow with a local bank.

For three years the buyers were constantly late in making their payments. Often they were more than a month in arrears. The sellers complained frequently about the lateness of the payments and asked the purchasers to improve the timeliness of payment. However, the sellers always accepted the late payments and never intimated that they would terminate the contract because of this breach of the contractual terms. After three years of acceptance of late payments, the sellers, without previous warning, withdrew the contract of sale from escrow on March 2, 1966, purporting to terminate the contract. At the time of withdrawal, payments were two months in arrears, but this was not unusual in light of the previous payment history. During the next two years the purchasers sought to reinstate the contract. They offered to pay the amount owing and even to pay several months in advance to subdue the sellers' fears of further late payments. The sellers never indicated a definite response to these proposals, but at one point offered to convey one-third of the property to the buyers in return for their accumulated payments under the contract, which approximated one-third of the purchase price. Things dragged on in this manner until August of 1968. The purchasers then made a tender offer of the entire amount owing under the contract, plus interest. When the sellers refused the tender offer, the purchasers brought suit for specific performance of the contract. During the entire period after withdrawal of the contract from escrow, both the purchasers and the sellers had been paying taxes on the property.

We uphold the trial court's decision to grant specific performance to the buyers in this case as a proper exercise of the court's equity powers under well settled rules governing equitable relief available to purchasers under land contracts.[2]

█ It is undisputed that the buyers were in breach of the contractual promise of prompt payment. But equity does not favor forfeitures.[3] A trial court may in its discretion refuse to enforce the forfeiture provisions of a contract if the equities of a particular situation so dictate.[4] Here the purchasers had paid and the sellers accepted almost one-third of the contract payments. Although the sellers complained of the late payments, the complaints were all directed at urging the buyers to set up a better payment method. The sellers never hinted that they would terminate because of the late payments.

In light of the above circumstances, we approve of the trial court's decision to grant specific performance to the buyers. We also hold that it was within the trial court's discretion to reject the appellants' proposal to convey one-third of the land to the buyers to compensate them for their payments.

If the purchasers had done nothing between the time when the sellers attempted to terminate the contract and the time, twenty-nine months later, when suit was brought, we would be presented with a far more serious problem. But during this period negotiations were taking place between the parties, however inconclusively, in an attempt to reconcile the various interests which had arisen under the contract.

Finding no error, we affirm the judgment of the superior court.

Affirmed.

2. Jameson v. Wurtz, 396 P.2d 68 (Alaska 1964); Williams v. DeLay, 395 P.2d 839 (Alaska 1964); Land Development Inc. v. Padgett, 369 P.2d 888 (Alaska 1962). Cf. Alaska Placer Co. v. Lee, 455 P.2d 218 (Alaska 1969).

3. Department of Revenue v. Baxter, 486 P.2d 360, 365 (Alaska 1971); Jameson v. Wurtz, 396 P.2d 68, 74 (Alaska 1964).

4. Jameson v. Wurtz, 396 P.2d 68, 74 (Alaska 1964); Williams v. DeLay, 395 P.2d 839, 846 (Alaska 1964).