Jack 'MORAN, Appellant,

v.

Rex F. HOLMAN, Appellee.

No. 1522.

Supreme Court of Alaska.

Oct. 6, 1972.

Ernest Z. Rehbock, Anchorage, for appellant.

Millard F. Ingraham, Ingraham & Niewohner, Fairbanks, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

OPINION

RABINOWITZ, Justice.

This appeal arises from Holman's successful suit against Moran for a decree of specific performance on a land sale contract. Almost all of Moran's specifications of error go to one assertion, that given the facts of the instant case the trial court

erred in refusing to enforce the strict foreclosure clause of the contract.[1]

The superior court found that the parties had entered into a written contract on September 9, 1967, for the purchase and sale of certain real property in Fairbanks.[2] Moran was the vendor and Holman was the vendee. The purchase price was $6,350, plus six percent interest annually, to be paid in monthly installments of $125. Holman was to pay the taxes and assessments on the property and to keep it insured. The contract also contained a typical "time is of the essence" clause providing for strict foreclosure in the event of breach of any covenant or agreement.[3]

Holman did pay the taxes for 1968 but Moran paid them in 1969 and 1970. Similarly, Holman did procure insurance, but failed to keep up the premiums, although the insurer continued the policy in effect from February 1970 to June 1970 without payment of any premiums. Moran subsequently made insurance payments to maintain coverage on the property. In the course of 16 months, Holman made six payments on the purchase price, equalling nine monthly installments, to the parties' escrow agent.

In the findings of fact the trial court found that "[d]uring most of the period of

the contract, [Holman] was in default under the contract for non-payment of monthly installments . . . and for non-payment of taxes and insurance . . . . " Moran finally sent Holman two notices of default, in May and June 1969, followed by a notice to vacate dated July 14, 1969. Meanwhile sometime prior to June 19, Moran had cancelled the escrow arrangements. Thus, when Holman tendered two more installments on June 19, the bank refused them. He subsequently tendered the full contract price to Moran personally through his attorney on August 8 and through his authorized agent on and continuously since August 19, 1969. Moran rejected all tenders, insisting on his right to strict foreclosure under the contract.

The trial court refused to enforce the relevant forfeiture provisions of the installment land contract. Rather the court concluded that Holman was entitled to specific performance if he cured his defaults within 90 days by payment of the entire balance due under the contract with interest, and by payment of certain expenditures with interest (which, although obligations of Holman under the contract, had been made by Moran).[4] We affirm the trial court's decision.

1. In his brief, Moran also raises the question of abandonment. He contends that Holman's defaults under the contract were inconsistent with continuance of the contract and therefore constituted abandonment. This argument was not made at trial nor listed in the appellant's statement of points on appeal. Alaska Supreme Ct.R. 9(e). We therefore decline to consider it. *See also* Jameson v. Wurtz, 396 P.2d 68, 73 (Alaska 1964).

2. Since neither party disputes the findings of fact which were entered by the trial court, for purposes of this appeal we will assume those facts to have been established by the evidence.

3. The clause provides:
   Time is the essence of this agreement and the due performance of all covenants and agreements on the part of the said buyer is a condition precedent whereupon depends the performance of the agreements on the part of said sell

[sic], and in the event of the failure of said buyer to comply with the covenants and agreements on his part entered into for a period of thirty (30) days, seller shall be released from all liability or obligation in law or in equity to transfer and convey said property, or any part thereof, and the escrow holder herein is instructed to return said deed to seller, on demand, and said buyer shall relinquish all rights hereunder, and all monies which shall have theretofore been paid hereunder, shall be considered as rental for the uses of said premises up to the time of default; and in such event the said buyer shall at once vacate and surrender said premises to said seller, on demand.

4. The conditions precedent to Moran's specific performance established by the trial court are as follows:
   a. [Payment of the] principal balance due on the contract, plus interest thereon to and including November 21, 1969,

In Jameson v. Wurtz,[5] this court adopted the principle that an application for specific performance of a contract, as a question of equity, is a matter addressed to the sound discretion of the trial court, guided by the principles of equity. The trial court's decision in such circumstances " 'will not be set aside unless against the clear weight of the evidence.' "[6] It is also well established in this jurisdiction that "equity abhors a forfeiture and will seize upon slight circumstances to relieve a party therefrom."[7]

While the court has so far refused to enforce the forfeiture provisions of an installment land contract only in cases involving more sizable investments by the vendee prior to the vendor's invocation of the forfeiture,[8] we did not intend in *Padgett, DeLay, Jameson,* or *McCormick* to promulgate a purely quantitative rule. Rather, we adopted the position espoused by the United States Supreme Court in Knickerbocker Life Insurance Company v. Norton,[9] that "where adequate compensation can be made . . . equity . . . discharges the forfeiture, upon such compensation being made."[10] The primary consideration for a court faced with a choice between specific performance and enforcement of a forfeiture clause was stated well in Ward v. Union Bond & Trust Company:[11]

[T]he ultimate aim in these proceedings in equity must be to save the respective parties harmless from loss or damage and, if just and equitable, place them in the status quo of their contract so as to permit them as vendor and vendee to each have the benefit of their respective bargains voluntarily entered into . . . not to be measured in the light or economics of subsequent events, but as of the day of the contract.[12]

In the instant case, the vendor's intended benefit was receipt of the purchase price. Although Moran may have occasionally complained about Holman's irregular payments, he did nothing for 16 months about enforcing timely payments.[13] From the time Moran unilaterally terminated the escrow account, Holman has made repeated and continuous tenders of the full purchase price. Thus, the instant case can be distinguished from Alaska Placer Company v. Lee,[14] where we found forfeiture was appropriate.[15]

---

in the sum of $6,016.80. No interest is due Defendant from and after November 21, 1969. The tender by Plaintiff was a continuing tender, has been continuously refused by Defendant, and was sufficient to stop interest accruing from and after the refusal of the tender.

　b. Repayment of sums expended by Defendant for payment of insurance premiums which were the obligation of Plaintiff to pay, in the sum of $487.25, plus interest thereon at the rate of six per cent per annum from the date of payment by Defendant until the date of tender of repayment by Plaintiff.

　c. Repayment of real property taxes for the years 1969 and 1970, paid by Defendant, plus interest thereon at the rate of six per cent per annum from the date of payment by Defendant until the date of tender of repayment by Plaintiff.

5. 396 P.2d 68 (Alaska 1964).

6. *Id.* at 74, *quoting* Shull v. Welch, 387 P.2d 606, 609 (Okl.1963).

7. *Id.* (footnote omitted); McCormick v. Grove, 495 P.2d 1268 (Alaska 1972); Land Dev., Inc. v. Padgett, 369 P.2d 888 (Alaska 1962).

8. *Compare* Williams v. DeLay, 395 P.2d 839 (Alaska 1964) *with* Alaska Placer Co. v. Lee, 455 P.2d 218 (Alaska 1969).

9. 96 U.S. 234, 24 L.Ed. 689 (1878).

10. *Id.* at 242, 24 L.Ed. at 692; Jameson v. Wurtz, 396 P.2d 68, 74 (Alaska 1964).

11. 243 F.2d 476 (9th Cir. 1957).

12. *Id.* at 480.

13. *See* McCormick v. Grove, 495 P.2d 1268 (Alaska 1972).

14. 455 P.2d 218 (Alaska 1969).

15. There the lessee had actually paid only $2,500 on a $400,000 lease for certain mining claims. Moreover, for five years he had not carried on the anticipated mining activities that were to pay the rest of the contract price, so there was no indication that he would be able to complete his payments within a reasonable period of time.

We therefore conclude that the trial court's grant of specific performance to Holman was, under the specific terms made conditions precedent to the grant of specific performance, a proper exercise of the superior court's power to extend equitable relief to purchases under land contracts.

Affirmed.

BOOCHEVER, J., not participating.