**STATE of Alaska, acting By and Through its DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellant, Cross–Appellee,**

**v.**

**EASTWIND, INC., Appellee, Cross–Appellant.**

**Nos. S–4546, S–4547.**

Supreme Court of Alaska.

May 14, 1993.

Virgina A. Rusch, Asst. Atty. Gen., Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellant/cross-appellee.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This breach of contract action arises out of a dispute between the State of Alaska and Eastwind, Inc., over Eastwind's performance of a highway construction contract. The state appeals the trial court's denial of its motion for summary judgment, and the court's findings of fact and judgment in favor of Eastwind, Inc. On appeal, the state argues that the trial court erred in concluding that the state breached its contract by unnecessarily directing Eastwind to use "blend sand" in its asphalt paving mix. The state also argues that the trial court incorrectly decided that Eastwind's claim should not be barred because of Eastwind's failure to request a written change order, and to give timely notice of its claim. Further, the state contends that the trial court's finding regarding the cost of aggregate is in error.

We affirm the decision of the trial court except for the amount awarded per ton of aggregate. The parties agree that such award should be based on a price of $5.19 per ton, instead of $7.50 per ton.

## I. FACTS & PROCEEDINGS

In December 1986, Eastwind contracted with the state of Alaska, Department of Transportation and Public Facilities to widen the Glenn Highway. The contract called for Eastwind to perform construction work, and to supply the asphalt paving mix required for the job. A special provision was intentionally added to the contract to improve pavement performance, by establishing higher than normal performance standards. The "Marshall Test," used to determine whether or not the aggregate gradation proposal met these stringent criteria, has been deemed to be the industry standard.

Eastwind submitted a representative sample of its proposed aggregate gradation mix to the state material lab in June 1987, as required by its contract. The state evaluated Eastwind's proposal before performing the Marshall test. The state acknowledged that Eastwind's proposed aggregate was within specification but suggested to Eastwind that the use of blend sand would be "more in spec." Eastwind responded that it did not want to use blend sand.

The state then tested Eastwind's proposed aggregate. The test results indicated that the proposed aggregate failed to meet the required specifications. No retest was done. The state informed Eastwind that the proposed aggregate failed the Marshall test. Eastwind was also told that by adding blend sand, the aggregate could meet the specifications. The trial court found that the discussion at this meeting constituted a direction from the state to add blend sand in order to get the state's approval.

Eastwind testified that, while it did not want to use blend sand, it agreed to use blend sand to get state approval of the aggregate. Eastwind did not get a written change order from the state. The state then approved Eastwind's mixture with blend sand. That same day, Eastwind learned from its own testing that the originally proposed aggregate could meet the test criteria. Samples later tested by two other labs and the state's lab passed the test.

In August, when Eastwind had the results of the test, it immediately filed written notice of a claim with the state. The state acknowledged receipt of the claim notice by letter. The state continued performing sample tests in September. These tests consistently confirmed that Eastwind's originally proposed aggregate did meet contract specifications.

In October, Eastwind requested an equitable adjustment in the contract, in the amount of $728,000. In an administrative decision, the state denied Eastwind's request, claiming that "(1) the state did not change the work by rejecting Eastwind's proposed aggregate gradation; (2) the state's rejection was proper because the Marshall criteria had not been met; and (3) Eastwind's evidence that commercial Alaskan laboratories had shown that no blend sand was necessary was irrelevant because the engineer determines the Job Mix Design and not the laboratory of Eastwind's choice."

Again in 1988, the state performed tests on samples that matched the gradation of Eastwind's originally proposed aggregate. All laboratories that tested the proposed aggregate after June, 1987 found that Eastwind's proposal passed the Marshall criteria.

Eastwind filed an appeal from the administrative decision in the superior court. The court granted a trial, denied the state's motion for summary judgment, and eventually awarded Eastwind an equitable adjustment of $251,300.25.

## II. DISCUSSION

### A. THE TRIAL COURT CORRECTLY FOUND THAT THE STATE WAS WRONG IN REJECTING EASTWIND'S PROPOSED AGGREGATE.[1]

 The trial court awarded damages to Eastwind and based its finding on the conclusion that the state breached its contract by incorrectly rejecting Eastwind's proposed aggregate and directing Eastwind to use blend sand. The state contends that this finding is erroneous and should be set aside. The state reasons that the contract provided for the state's engineer to determine the design of the asphalt paving mix. Therefore, the trial court failed to respect the state engineer's judgment.[2]

In the alternative, the state argues that even if the trial court does not have to accept the engineer's determination, the evidence does not show that the state's testing was erroneous. This argument is also unpersuasive. The state, Eastwind's laboratory, and two outside labs continued testing the proposed aggregate until April 1988. Except for the state's first testing, all other samples of the originally proposed aggregate passed the Marshall criteria. While the state presented evidence contrary to these findings, this court will not weigh the evidence. *Martens v. Metzgar,*

1. Whether or not the state made the right decision is a question of fact. Therefore, this court can intervene only if the trial court's finding is clearly erroneous. *Adrian v. Adrian,* 838 P.2d 808, 811 (Alaska 1992). The finding is "clearly erroneous" if this court has a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding. *Brosnan v. Brosnan,* 817 P.2d 478 (Alaska 1991).

2. The state cites no authority to support its argument. As the state explains, the engineer's

determination should be accepted by the trial court unless the engineer's use of his authority was unreasonable or arbitrary.

The initial rejection of Eastwind's proposal came before the Marshall test was actually performed. Once the state tested the proposal, the result was unusual. Even though the result was unusual, the state did not re-test the aggregate. Given the facts, the trial court properly concluded that the state incorrectly rejected Eastwind's initially proposed aggregate.

591 P.2d 541 (Alaska 1979). This court is satisfied that the facts on the record support the trial court's finding that the state's testing was wrong. Thus, we affirm the trial court's finding that the state breached its contract by rejecting the proposed aggregate.[3]

### B. THE TRIAL COURT CORRECTLY DECIDED THAT EASTWIND'S CLAIM WAS NOT BARRED BECAUSE OF EASTWIND'S FAILURE TO OBTAIN A WRITTEN WORK ORDER OR TO GIVE PROMPT NOTICE OF INTENT TO CLAIM.[4]

■ The state further argues that Eastwind's claim should have been dismissed for failure to comply with the written order and notice of claims provisions of the contract. We have already decided a case involving this issue.

> With regard to the requirement of formal notice, we note that the purpose of the notice provision was to insure that the city knew of the delay and did not continue to rely on their expectations that the housing would be completed.... The city did know of the construction delay without formal notice, and there is no evidence that it was in any way prejudiced by the failure to receive formal notice. We agree with the trial court that this combination of actual notice and lack of prejudice to the city excused Section 707's requirement of written notice.

*City of Valdez v. Valdez Development Co.*, 523 P.2d 177, 182–83 (Alaska 1974).

In the case at bar, the state also knew of the change and was not prejudiced by the lack of written notice. The state argues that Eastwind should have said: "we are not going to add blend sand unless you order us in writing to do so." Had it done so, the state would have immediately clarified its position by saying that it was not insisting on the use of blend sand, just that the aggregate material meet applicable specifications. This argument is contradicted by what actually happened. When the written notice of claim was made, on August 19, the state did not go to Eastwind and say "We did not order you to use blend sand and you can use anything you want on the remainder of the job so long as specifications are met.", even though more than half of the project remained to be done.

The trial court found that it was not until August 19, 1987 that Eastwind had a reasonable basis for asserting that the state's directive to use blend sand was a contract change. This occurred when the additional testing, that the state had agreed to, was completed and showed that the material proposed by Eastwind would meet specifications. At that point, Eastwind did give written notice. Also, by participating in the additional testing, the state was found to have acquiesced in waiving any earlier notice that might have been required. Thus, the state's arguments that Eastwind's claims should be dismissed for failure comply with the written order and notice requirements are without merit.

### C. THE TRIAL COURT ERRED IN DETERMINING THE COST OF THE AGGREGATE.

The next question on appeal is whether the trial court correctly determined extra costs for the addition of blend sand use. Because this is a question of fact, the trial

---

**3.** Thus, we affirm the trial court's denial of the state's summary judgment motion since it correctly found that the state breached its contract.

**4.** Whether Eastwind's claim is barred due to its failure to request a written order or give written notice is an issue of law. The standard of review for conclusions of law allows this court to substitute its judgment for the superior court's, adopting the rule that is most persuasive in light of precedent, reason, and policy. *Guin*

*v. Ha*, 591 P.2d 1281, 1284, n. 6 (Alaska 1979); *Peters v. Juneau–Douglas Girl Scout Council*, 519 P.2d 826, 834 (Alaska 1974). The superior court concluded that the state, by its words and actions, directed Eastwind to use blend sand. The superior court did not strictly enforce the written order requirement and concluded that Eastwind was entitled to an equitable adjustment for the added costs.

court's decision stands unless this court is convinced that the trial court's findings of fact are clearly erroneous. *Native Alaskan Reclamation & Pest Control v. United Bank Alaska*, 685 P.2d 1211, 1215 (Alaska 1984).

 The state claims that the extra costs allotted for crushing were erroneous.[5] The state argues that the cost of aggregate is $5.19 per ton and not $7.50 per ton.

Eastwind concedes that the price of the aggregate per ton is $5.19 and not $7.50. Therefore, we hold that the crushing costs are reduced in the amount of $23,885.40, from $77,550.00 to $53,664.60. This results in a reduction of the total damage award from $251,300.25 to $227,414.85.

### III. CONCLUSION

We affirm the trial court's decision, except for one change. The trial court correctly found that the state was wrong in rejecting Eastwind's proposed aggregate. The trial court's finding of a resulting breach of contract was not clearly erroneous. Additionally, the trial court correctly

decided that Eastwind's claim was not barred for failure to request a written order or give prompt notice of a claim.

The trial court incorrectly calculated the extra costs for the use of blend sand. As the parties concede, the trial court erred in the figure used in the calculation. Thus, the correct amount is a deduction of $23,885.40 from the trial court's judgment.

We AFFIRM the trial court's decision in favor of Eastwind, Inc. However, we instruct the trial court to reduce the amount of its damage award from $251,300.25 to $227,414.85, to reflect the corrected cost of aggregate at $5.19 per ton.

---

5. Additionally, the state appeals the trial court's rulings regarding the excess costs of purchasing, hauling, screening and loading of the blend sand.

At trial, the court heard expert testimony that, under the circumstances, it was reasonable for Eastwind to purchase and haul from the King Street location, even if the purchase cost was .50 more per ton. Eastwind had less than 24 hours notice from the time they learned of the need for blend sand to the time they had to purchase the sand. Eastwind controlled the King Street location and the sand there was immediately available. King Street apparently had the highest quality blend sand and was superior to that of the Lake Otis Pit. The expert testified that had Eastwind waited even a day to get bids and search for a better quality blend sand, the cost of the delay may be "a heck of a lot more than a few cents difference in purchase price." Given the facts presented to the trial court, we affirm the finding below. There exists no clear error by the trial court with which we can decide otherwise.

The evidence supports the trial court's ruling for extra screening costs. The state's expert testified that Eastwind's use of their crushing operation may have been the prudent thing to do. The trial court committed no clear error in accepting this testimony from the state's expert.

Eastwind argues that the cost of loading was increased because with the addition of blend sand, there were three piles to load instead of two. Loading from three piles took longer than two. The increased loading time cost Eastwind an extra $7,853. This evidence was submitted as expert testimony, reviewed by the trial court, and found to be conclusive. Without a clear showing of error, this court must affirm the trial court's finding in this instance.

On cross-appeal, Eastwind claims that the trial court incorrectly determined the amount of increased production costs. This argument was not raised below and thus, this court cannot review it now. *In re L.A.M.*, 727 P.2d 1057 (Alaska 1986).

Eastwind also claims error in the trial court's ruling that Eastwind is not entitled to an enhanced rate of prejudgment interest. Further, Eastwind argues that the trial court erred in applying the statutes on prejudgment interest with regard to the effective start date. In that Eastwind did not include either argument in its Statement of Points on Cross-Appeal, this court will not address these questions. Alaska R.App.P. 210(e); *Moran v. Holman*, 501 P.2d 769 (Alaska 1972).

We are unpersuaded that any of these contentions have merit.