Dewey MORRIS, III, Appellant,

v.

Sandra J. HORN, Appellee.

No. S–12514.

Supreme Court of Alaska.

Nov. 13, 2009.

---

Dewey Morris, III, pro se, Anchorage, Appellant.

William Grant Stewart, Wasilla, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Dewey Morris, III appeals superior court orders enforcing a property settlement agreement, modifying child support, and limiting visitation based on a finding of domestic violence under AS 25.24.150. Because the superior court did not address Morris's claim that he conveyed his one-half interest in the marital residence to his former spouse in exchange for her promise to assume the corresponding obligations, we reverse the order enforcing the parties' property settlement agreement and remand for a determination of whether this conveyance occurred. Because the modified child support order and record are silent on how child support was calculated, we reverse that order and re-

mand. Finally, because it was inappropriate to give issue-preclusive effect to a prior domestic violence order entered without actual litigation of the domestic violence allegation, we reverse the visitation order and remand for rehearing on that issue.

## II. FACTS AND PROCEEDINGS

Sandra Horn, formerly Sandra Morris, and Dewey Morris, III married in 1976 in Michigan. They later moved with six of their ten children to Willow and began building a house. Morris is a carpenter. Horn works as a home health-care provider.

In April 2002 Horn and Morris filed a petition for dissolution without the benefit of counsel. The petition proposed the award of the Willow home to Horn and Morris jointly. The parties estimated the value of the Willow home to be $80,000. The petition stated that Morris would pay monthly spousal support and $1,545.76 in monthly child support under Alaska Civil Rule 90.3 for the five children living at home. The petition did not address child custody or define visitation.

In August 2002 Horn and Morris filed an amendment to the dissolution agreement and participated in a dissolution hearing before Superior Court Judge Beverly W. Cutler without the benefit of counsel. They agreed on the record that both would continue living in and jointly owning the Willow house, and that Morris would pay the property taxes and loan payments on the construction loan he obtained and secured with a deed of trust on the house.[1] The court approved these agreements in its oral decision on the record.[2]

The dissolution decree, entered August 27, 2002:(1) granted Horn legal and primary physical custody with "free and open visitation" to Morris, including overnight, unsupervised visitation; (2) ordered Morris to pay $500 in monthly spousal support with no end date; and (3) ordered Morris to pay

---

1. The parties also agreed that any decision to sell the property would be made jointly and that there was no mortgage on the property.

2. The court asked the parties if each agreed this was a "complete and fair agreement" and both responded "yes." The court concluded this appeared to be a "complete and fair" agreement,

though it was "confusing," but not impermissible, to have a dissolution decree if the parties were still living together. Both parties agreed to this. Morris later testified he lived in the Willow home until a couple of months after the dissolution hearing.

$1,545.76 in monthly child support under Civil Rule 90.3 until and while each child is twenty-one if unmarried, in high school or an equivalent technical or vocational program, and dependent.[3]

By June 2003 Morris was in arrears on his child support obligation and Child Support Enforcement Division (CSED) began withholding payments from his income. In September 2003 CSED calculated Morris's arrears as totaling $12,772.24. By this time, Horn was apparently paying the property taxes on the Willow home.

In October 2003 Horn filed a petition for a twenty-day protective order and a long-term protective order against Morris; she was represented by counsel in filing this petition and going forward.[4] Horn cited two incidents that occurred that month to support the domestic violence petition: (1) Morris allegedly had a fight with a baby-sitter in front of the children resulting in a call to state troopers;[5] and (2) Morris allegedly followed Horn to or from the Anchorage airport and threatened her. On October 30, 2003, a magistrate issued an ex parte twenty-day protective order, which was later extended by the parties' stipulation.

In February 2004 Horn requested that CSED waive Morris's spousal support obligation to help him meet his child support, tax, and loan obligations; CSED granted this request. But by November 2004, Morris had apparently stopped making payments on the construction loan secured by the house. Horn made payments on the loan to avoid foreclosure in 2004, 2005, and 2006.

In June 2006 Morris filed pro se a motion to modify custody, support, and visitation.[6] Morris claimed in his motion that Horn was blocking his efforts to visit their children. He requested a hearing on visitation and custody, "weekly" visitation and unlimited phone contact, and full or fifty-percent custody. Morris also sought a decrease in child support based on decreased income.[7]

Horn opposed Morris's motion and filed a cross-motion to modify custody and "correct or amend judgment." She argued for, among other things, full legal and physical custody under AS 25.24.150, claiming Morris had physically abused her and that this required denying him custody and unsupervised visitation.[8]

---

**3.** In June 2003 Morris's child support obligation was reduced to $1,426.89 per month because one of the children was no longer living at home.

**4.** AS 18.66.110(a) states, in pertinent part:

A person who is a victim of a crime involving domestic violence may file a petition under AS 18.66.100(a) and request an ex parte protective order. If the court finds that the petition establishes probable cause that a crime involving domestic violence has occurred, it is necessary to protect the petitioner from domestic violence, and if the petitioner has certified to the court in writing the efforts, if any, that have been made to provide notice to the respondent, the court shall ex parte and without notice to the respondent issue a protective order.... An ex parte protective order expires 20 days after it is issued....

AS 18.66.100 provides, in relevant part:

(a) A person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member....

(b) When a petition for a protective order is filed, the court shall schedule a hearing and provide at least 10 days' notice to the respondent of the hearing and of the respondent's right to appear and be heard, either in person or by an attorney....

**5.** Horn was out of town during this incident, but her baby-sitter called the state troopers after Morris allegedly yelled at her on the phone.

**6.** By this time he owed a total of $38,833.01 in child and spousal support.

**7.** The dissolution petition reported that Morris's total gross income was $55,744 and his net income was $47,562. The DR–305 form he filed with his motion to modify child support listed his total gross income as $36,118.45 and his net income as $33,833.40.

**8.** AS 25.24.150 provides, in pertinent part:

(g) There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.

(h) A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the

Horn also requested that the court: (1) issue a permanent restraining order; (2) reduce to writing the oral order that Morris pay the property taxes and require compliance with that order; [9] (3) order Morris to pay past due child support; and (4) require Morris to pay the construction loan, repay Horn for $9,849.83 in payments she had made on it, meet a deadline for paying off the loan, and grant Horn access to the loan information. Horn filed her own affidavit, as well as affidavits of two of the parties' children and several friends, to support her allegations of domestic violence, substance abuse, and Morris's failure to pay the property taxes and loan payments. [10]

Morris responded by filing an affidavit in August 2006 in which he claimed, among other things, that he had transferred his one-half interest in the Willow property to Horn by quitclaim deed and was not responsible for the property taxes or loan payments, and that he did not have substance abuse problems or need parenting or other counseling.

Superior Court Judge Eric Smith, to whom the case had been reassigned, issued an order denying Morris's request for a hearing on modification of custody for failure to show "a significant or substantial change of circumstances." [11] But the court found the breakdown in communications between the parties showed a "change of circumstances" for purposes of visitation and granted Morris's request for a hearing on that issue. The court reserved Morris's motion to modify child support for the visitation hearing and ordered the parties to file child support guideline affidavits.

Without making a finding as to whether Morris had conveyed his one-half interest in the marital residence to Horn in exchange for her agreement to assume the tax and loan obligations, the court granted Horn's request to enforce the parties' original property agreement and to require Morris to pay the taxes and loan payments. The court did so because it found that Morris agreed to assume those obligations at the 2002 dissolution hearing. It ordered Morris to reimburse Horn for the tax and loan payments she made, to prospectively pay those obligations, and to grant Horn access to the loan information.

In December 2006 Horn moved for both interim and long-term protective orders under AS 25.24.140 [12] and AS 18.66.100, submitting another affidavit alleging that Morris physically, verbally, and sexually assaulted and threatened her. The court did not hold a hearing before granting the order on January 18, 2007.

perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent ... or because of other circumstances that affect the best interests of the child.
...
(j) If the court finds that a parent has a history of perpetrating domestic violence under (g) of this section, the court shall allow supervised visitation by that parent with the child, conditioned on that parent's participating in and successfully completing an intervention program for batterers, and a parenting education program, where reasonably available, except that the court may allow unsupervised visitation if it is shown by a preponderance of the evidence that the violent parent has completed a substance abuse treatment program if the court considers it appropriate, is not abusing alcohol or psychoactive drugs, does not pose a danger of mental or physical harm to the child, and unsupervised visitation is in the child's best interests.

9. Horn claimed she had paid "around $24,000 in taxes."

10. Horn's affidavit and those of her children, who were eighteen and fifteen at the time, make serious allegations of abuse. Horn stated Morris sexually assaulted her both during and after the marriage, verbally and physically abused her throughout the marriage, and used severe physical discipline on the children. The younger child stated in her affidavit that she had observed Morris throw, grab, and physically fight with Horn, had seen injuries and scars on Horn because of his abuse, and had heard him threaten to kill her.

11. AS 25.20.110(a) permits a court to modify a child custody or visitation award "if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."

12. AS 25.24.140(b) permits courts to issue "necessary protective orders" during the pendency of a dissolution action.

On February 27, 2007, Superior Court Judge Vanessa White, to whom the case had been reassigned, held a hearing on child support and visitation. The hearing did not address the property tax and loan payment issues, and the court did not permit Morris to challenge the order requiring him to pay these obligations. At the hearing Morris presented for the first time some pay stubs and tax returns, dated from 2001 through 2007.[13] Because of Morris's untimely production of these documents, the court reserved the question of child support.[14] Horn stipulated that she should not receive child support for A.M., one of the parties' daughters, after December 31, 2006.

On the issue of visitation, the court heard Horn testify that Morris physically, verbally, and sexually assaulted and abused her, and that Morris has a substance abuse problem. Two witnesses testified that they observed Morris act verbally or physically aggressive toward Horn or the children; one witness testified she heard Morris verbally threaten Horn and that Morris told her he had sexually assaulted Horn. The court also held a confidential interview with two of the children. Morris denied any domestic violence, alleged Horn was verbally abusive toward him, and denied substance abuse. He testified that, after he left the marital residence around October 2002, he tried to contact the children still living in the home but Horn blocked these efforts by, among other tactics, obtaining restraining orders against him. Horn denied these allegations and testified that Morris failed to show up to four scheduled visits and to events to which he had been invited.

13. The court admitted the pay stubs and tax returns as exhibits but only one document, apparently concerning 2006 taxes, is in the record.

14. The court ordered Morris to file a proposed DR–305 within five days of the hearing using his 2007 and 2006 pay stubs (fourteen months of pay stubs) as the basis for calculating his average income.

15. AS 25.24.150(g), (h), (j). The court found there was insufficient evidence to make a finding on substance abuse.

16. We understand that the trial court used the phrase "therapeutic visits" to mean visits with

Based on this testimony, the court made an oral finding that at least two instances of domestic violence had occurred: one in October 2003 that led to a domestic violence restraining order, and one based on Morris's threats of bodily harm to Horn. The court concluded that finding two instances of domestic violence created an unrebutted presumption of a history of domestic violence, requiring limited or supervised visitation under AS 25.24.150.[15] In an oral decision on the record, the court ordered that unsupervised visits could occur only after Morris completed an intervention program for batterers at his own expense. The court also ordered Morris to participate in therapeutic visits with the children at his expense.[16]

Morris filed his child support guideline affidavit in March 2007. This document reported his total gross income as $37,823.50, and his net income as $20,984.72. In April 2007 the court signed a written order modifying child support to $921.83 per month for three children, ending December 31, 2006, and $754.22 for two children, starting January 1, 2007.

Morris appeals.

## III. STANDARD OF REVIEW

 "We determine de novo whether relief requested by a former spouse constitutes enforcement or modification of a property settlement agreement."[17] But we review a superior court order enforcing a property settlement agreement that was incorporated into a dissolution decree for abuse of discretion.[18] Likewise, we review child support awards and visitation orders for abuse of discretion.[19] A superior court

the children in the presence of, or facilitated by, a counselor.

17. *Krushensky v. Farinas*, 189 P.3d 1056, 1060 (Alaska 2008) (citing *Williams v. Crawford*, 982 P.2d 250, 253 (Alaska 1999)).

18. *Horchover v. Field*, 964 P.2d 1278, 1281 (Alaska 1998) (citing *Meyeres v. Meyeres*, 705 P.2d 921, 922–23 (Alaska 1985)).

19. *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002) (citing *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)) (child support); *Faro v. Faro*, 579 P.2d 1377, 1379 (Alaska 1978) (citing *Curgus*

abuses its discretion by making a decision that is "arbitrary, capricious, manifestly unreasonable, or . . . stem[s] from an improper motive."[20] We review the superior court's analysis of legal questions de novo.[21]

## IV. DISCUSSION

### A. The Superior Court Must Decide Whether Morris Conveyed His One–Half Interest in the Marital Residence to Horn in Exchange for Her Promise To Assume the Property Obligations.

■ Morris argues that the court abused its discretion by requiring him to pay property taxes on the Willow home and loan payments on the construction loan per the parties' dissolution decree. He claims that when the parties realized they could no longer live together, he transferred his interest in the marital home to Horn and they agreed she would assume the property tax and loan payment obligations. Horn replies that because Morris never filed a Civil Rule 60(b) motion to modify the property agreement, he cannot seek relief now.[22]

The court ordered Morris to pay the obligations associated with the Willow residence without addressing his allegation that a subsequent conveyance occurred. Instead, the court found that Morris agreed to pay the taxes and the loan amounts at the dissolution hearing, and that this verbal property agreement merged into the dissolution decree and was enforceable. Because the superior court failed to address the question whether the parties entered into a subsequent contract that superseded their earlier agreement, we remand for a determination of whether Morris conveyed his interest in the home to Horn after the decree was entered.

■ Generally, if a party to a property settlement seeks relief from a dissolution decree into which the settlement is incorporated, the party must request relief under Civil Rule 60(b).[23] Although the court may adjudicate property rights,[24] it does not have statutory authority to modify the terms of a property settlement.[25]

Here, it is undisputed that Morris neither filed a Civil Rule 60(b) motion nor requested modification of the property agreement. But he repeatedly alleged a subsequent transaction occurred in which he transferred his interest in the marital residence to Horn in return for her promise to assume the tax and loan obligations. When he made this allegation in the child support and visitation hearing, the court refused to address it because

*v. Curgus*, 514 P.2d 647, 649 (Alaska 1973)) (visitation).

20. *Collins v. Arctic Builders*, 957 P.2d 980, 981 (Alaska 1998) (citation omitted).

21. *Hopper v. Hopper*, 171 P.3d 124, 128–29 (Alaska 2007) (citing *McGee v. McGee*, 974 P.2d 983, 987 (Alaska 1999)).

22. Alaska Civil Rule 60(b) provides, in relevant part:
 > On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
 > (1) mistake, inadvertence, surprise or excusable neglect;
 > (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 > (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
 > (4) the judgment is void;
 > (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise

 > vacated, or it is no longer equitable that the judgment should have prospective application; or
 > (6) any other reason justifying relief from the operation of the judgment.
 > The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c).

23. *See Stone v. Stone*, 647 P.2d 582, 585–86 (Alaska 1982) (holding that if a party fails to seek timely relief under Rule 60(b), "the superior court lacks jurisdiction to grant relief from the original decree").

 Neither party disputes the court's finding that the verbal tax and loan agreements constituted a property settlement that merged into the dissolution decree.

24. AS 25.24.160(a)(4); *see also Lowe v. Lowe*, 817 P.2d 453, 456 (Alaska 1991).

25. *Stone*, 647 P.2d at 585 (citing former AS 09.55.220).

property issues were not within the scope of the hearing. On appeal, Morris again claims he conveyed his interest in the marital residence to Horn and that she agreed to undertake the tax and loan obligations.

At no point has a court addressed Morris's allegation that a subsequent transaction occurred. Notably, Horn does not directly refute the assertion: she claims Morris "makes false statements regarding the transfer of the property," but she also argued in the trial court that the marital home had been "awarded to" her, contrary to the dissolution decree granting the parties joint ownership. Indeed, before the trial court Horn repeatedly referred to the marital residence as solely hers.

Whether this subsequent transaction occurred matters. We have explained:

> A subsequent contract completely covering the same subject-matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, substitutes, and is substituted for the earlier contract and becomes the only agreement of the parties on the subject.[26]

If Morris conveyed his one-half interest in the marital residence to Horn, and if the parties agreed Horn would accept the property in exchange for her promise to assume the tax and loan obligations, then this subsequent contract supersedes the earlier, conflicting property settlement agreement. Under such a scenario, Civil Rule 60(b) would not apply because Morris would be seeking to enforce the subsequent contract, not to modify or obtain relief from the dissolution decree. We therefore remand for the superi-

or court to make a finding about whether the second transaction occurred.[27]

### B. The Superior Court Must Show How It Calculated the Child Support Obligation in the Child Support Order.

Morris complains the superior court incorrectly calculated the amount of child support he owes under Civil Rule 90.3 [28] for four reasons. Although we reject most of Morris's claims, we reverse and remand the child support order for clarification. We first address our reasons for reversing the order and then discuss Morris's other, unavailing claims.

#### 1. The superior court must show how it calculated the child support obligation.

■ Morris argues the court should have calculated his child support based on an income of $30,000, not $40,000. At the 2007 hearing the court admitted into evidence pay stubs from 2001 to 2007, giving little weight to those from 2001 and 2002 because they preceded the original 2002 child support order. The court explained that the older pay stubs were of limited relevance because the court is "not allowed to retroactively modify ... child support." The court ordered Morris to fill out a DR–305 form using his 2006 and 2007 pay stubs to determine his "average net monthly income," on which the award would be based. Morris's 2007 DR–305 form indicated his gross income amounted to $37,823.50 and his net income to $20,984.72. It did not indicate whether Morris received a permanent fund dividend (PFD) for that year. His June 2006 DR–305 indicated his gross income, including a PFD, was $36,118.45, and his net income was

**26.** *Bishop v. Clark*, 54 P.3d 804, 809 (Alaska 2002) (quoting 15 WALTER H.E. JAEGER, WILLISTON ON CONTRACTS § 1826, at 485–86 n. 9 (3d ed. 1972)).

**27.** Horn argues Morris waived his claims regarding the tax obligation by failing to raise them in his points on appeal. *See* Alaska R.App. P. 204(e). Morris filed his points on appeal pro se. His list of points on appeal and the accompanying affidavit reference the tax obligation; the latter requests an order that Horn be required to pay the taxes. Because Morris filed these documents pro se, and because he generally complied

with the requirements of Appellate Rule 204(e), we apply a more relaxed procedural standard. *Cf. Smith v. Sampson*, 816 P.2d 902, 906 (Alaska 1991) (citing *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989)). We also apply this standard to the other claims that Horn argues Morris waived for failure to include them in his points on appeal.

**28.** Civil Rule 90.3 provides the presumptive formula for calculating a non-custodial parent's child support obligation.

$33,833.40. But neither the order modifying child support nor the record specifies which income figures were used to calculate Morris's obligations.

We are unable to determine what income the court used for its calculation. Our attempts to recreate the child support calculation—working backwards from the obligations in the order—were unsuccessful. We used Morris's 2006 and 2007 incomes, both with and without a PFD. But none of our calculations yielded the amounts listed in the modified child support order. We have held that "trial courts must make specific findings under Rule 90.3."[29] Because we cannot determine how the court calculated this child support obligation, we must reverse and remand for clarification.[30]

**2. The superior court did not abuse its discretion under any of Morris's other theories challenging the support order.**

**a. The superior court did not abuse its discretion by not calculating Morris's income based on his average income over several years.**

Morris claims that because his income has been inconsistent, the court should have averaged his income over "several years."[31] We disagree. Under Civil Rule 90.3(a), the court must calculate the noncustodial parent's child support based on the parent's "adjusted annual income," which means "the parent's total income from all sources," minus specified deductions.[32] The commentary to Civil Rule 90.3 states: "The

determination of future income may be especially difficult when the obligor has had very erratic income in the past. In such a situation, the court may choose to average the obligor's past income over several years."[33]

The record contains testimony indicating Morris's income was inconsistent. Horn testified in the August 2002 hearing that because Morris is a carpenter, "some months or years he might make really good money and when that job's over ... it could be a very different amount." In the February 2007 hearing Morris testified his wages went up and down depending on the job and overtime. He stated in his motion to modify child support and in his accompanying affidavit that his income had decreased. Based on this record the court could have found his income erratic and could have averaged his past income from 2003 to 2007. But the court has discretion to determine the best indicator of future earnings. Here, the court appears to have focused on Morris's earnings in the most recent fourteen months.[34] This decision was reasonable and not an abuse of discretion.[35]

**b. The superior court properly included A.M. in the child support order until her date of emancipation.**

Morris complains the court erred by including A.M., one of the parties' daughters, in the child support order, claiming she was legally emancipated when he filed his motion in June 2006. Horn replies that Morris knew that A.M. was not legally emancipated

---

**29.** *Terry v. Terry*, 851 P.2d 837, 837–38 (Alaska 1993) (citing *Renfro v. Renfro*, 848 P.2d 830 (Alaska 1993)).

**30.** *Cf. Monette v. Hoff*, 958 P.2d 434, 437 (Alaska 1998); *Terry*, 851 P.2d at 838–39.

**31.** Morris did not waive this argument; he was unrepresented in the hearing and he submitted pay stubs dating back to 2001, impliedly requesting that the court consider his income over several years.

**32.** Alaska R. Civ. P. 90.3(a) & (a)(1).

**33.** Alaska R. Civ. P. 90.3, cmt. III.E. "The commentary to Civil Rule 90.3 has not been officially adopted, but it can provide useful guidance in applying the rule." *Miller v. Clough*, 165 P.3d

594, 600 n. 10 (Alaska 2007) (citing *Caldwell v. State*, 105 P.3d 570, 573 n. 6 (Alaska 2005)).

**34.** The court did not consider income from 2002 or earlier in order to avoid retroactively modifying child support. *See* Alaska R. Civ. P. 90.3(h)(2); *see also Yerrington v. Yerrington*, 933 P.2d 555, 558 (Alaska 1997). But it may be that Morris offered earlier income information to buttress an argument that his 2006 income was aberrational, and not a reliable indicator of his future earnings. On remand, Morris will have the opportunity to offer income information that pre-dates 2006, if he believes it provides a better indication of his future income.

**35.** *Renfro v. Renfro*, 848 P.2d 830, 833 (Alaska 1993) (citing *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992)).

until December 2006 and that he waived any objection by not raising this issue below.

Horn has the better of these arguments. She filed a notice of ineligibility in January 2007, before the child support hearing, stating that A.M. was ineligible for child support effective December 31, 2006. During the hearing, Horn stipulated that she should not receive child support for A.M. "as of end of December." Morris did not object to ending the child support obligation for A.M. after December 2006. On appeal, Morris provides no support for his claim that A.M. was legally emancipated before January 1, 2007. The superior court did not err by including A.M. in the child support order, with Morris's obligation for her to extend until December 31, 2006.

**c. The superior court did not abuse its discretion by not permitting Morris to pay child support under the seasonal income provision, Civil Rule 90.3(c)(5).**

▌ Morris contends that "[d]espite the fact [he] testified he was employed on a seasonal basis as a carpenter," the court did not calculate his child support under Civil Rule 90.3(c)(5). Horn responds that Morris "never requested seasonal payments" and has waived the issue. We agree with Horn.

Under Civil Rule 90.3(c)(5), if a court finds a non-custodial parent's "income is seasonal, the court may order that the annual support amount be paid in unequal monthly payments, with higher payments during the months the parent expects to receive higher income and lower payments in other months." A court "should not make such an order unless (a) it finds that the burden of budgeting for periods of unequal income should be placed on the obligee rather than the obligor and (b) the obligee agrees." [36]

Morris did not request seasonal payments or characterize his employment as seasonal in his motion, affidavit, DR–305s, or testimony below. The closest he came to raising this issue was his June 2006 motion requesting a decrease in child support. There, Morris stated that his work hours were sporadic,

that he had just obtained full-time employment, and that he did not make the income he had made in 2002. But he did not fill out the "seasonal income" section on either his June 2006 or March 2007 DR–305 forms, and his August 2006 affidavit stated only that he was not making the income he had made in 2002. Further, Morris did not characterize his work as seasonal at the child support and visitation hearing. At that hearing the following exchange occurred between the court and Morris:

> Q: And ... given that you're a ... carpenter, can I assume that unlike other construction workers, ironworkers, masons, people like that, you can work year-round if there's work available?
>
> A: If there's work available and—and you can take the job on.

The record and testimony show Morris did not claim or testify his work was seasonal in the trial court; thus, he waived this issue. [37]

**C. It Was Error To Conclude the 2003 Domestic Violence Restraining Order Established that Morris Has a History of Domestic Violence for Purposes of AS 25.24.150.**

▌ Morris claims the court erred in limiting visitation under AS 25.24.150 based on a prior protective order. He appears to believe that the court relied on the January 2007 domestic violence order to find that he has a history of domestic violence. Horn argues that the court properly limited Morris's visitation under AS 25.24.150, claiming the court relied not only on the January 2007 order, but also on other evidence of domestic violence in the record.

The court did not reduce its visitation order to writing, but the court did make oral findings on the record. It found "there was an incident of domestic violence in October of 2003 which led to a long-term domestic violence order being entered ... that has res judicata effect in this proceeding in that— that required a finding by a preponderance of the evidence that domestic violence has occurred." The court also found "the testi-

---

**36.** Alaska R. Civ. P. 90.3(c)(5).

**37.** *Cf. Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001).

mony of Ms. Horn, corroborated by more than one witness here today, that Mr. Morris made threats of bodily harm to her," was sufficient to "make a preponderance finding that there is at least a second act of domestic violence because of those corroborated threats of bodily harm to Ms. Horn."

Although the court heard a significant amount of testimony about Morris's alleged abuse of Horn, the court refrained from finding other instances of domestic violence: "I'm not saying the other incidents of alleged domestic violence occurred or did not occur, but these are the two that I feel I can, that I must find by a preponderance of the evidence did exist and that's all the statute requires me to find." The court concluded these two domestic violence findings satisfied AS 25.24.150(h), raising an unrebutted presumption of domestic violence under AS 25.24.150(g) and triggering limits on visitation per AS 25.24.150(j). The court orally ordered Morris to complete a batterers' intervention program and to undergo therapeutic visitation with the children.

Alaska Statute 25.24.150(g) states that if the court finds that a parent has a "history of perpetrating domestic violence against the other parent," the perpetrator may not be awarded sole or joint legal or physical custody. Subsection .150(h) provides that a parent has a "history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent engaged in more than one incident of domestic violence." [38] Once a court finds a "history of perpetrating domestic violence under (g)," subsection .150(j) requires the court to limit the parent's visitation:

[T]he court shall allow only supervised visitation by that parent with the child, conditioned on the parent's participating in and successfully completing an intervention program for batterers, and a parenting education program, where reasonably available, except that the court may allow unsupervised visitation if it is shown by a preponderance of the evidence that the violent parent ... does not pose a danger of mental or physical harm to the child, and unsupervised visitation is in the child's best interests.

 From the audio recording of the oral findings, it is clear the court relied on the 2003 domestic violence order to find one of the two instances of domestic violence; the court did not rely on the 2007 order. Specifically, the court stated that the 2003 domestic violence order had "res judicata" effect on the court's custody and visitation determination under AS 25.24.150, requiring the court to find that an incident of domestic violence had occurred for purposes of AS 25.24.150(g) and (h). But because the doctrine of res judicata "bars ... relitigation of the same cause of action," [39] and because domestic violence and visitation modification proceedings are different causes of action,[40] we believe the court must have meant to invoke the doctrine of issue preclusion, or collateral estoppel. Under that doctrine, "an issue of fact which is actually litigated in a former action may, under certain circumstances, be regarded as conclusive in a subsequent case." [41]

Although we have not decided whether, as a general matter, domestic violence orders issued under AS 18.66.100 may have issue-preclusive effect in a subsequent child custody or visitation proceeding, we addressed a

38. "The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers...." AS 25.24.150(h).

39. *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997) (explaining the doctrine of res judicata "provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, [and] (3) in a dispute between the same

parties (or their privies) about the same cause of action" (citing *Blake v. Gilbert*, 702 P.2d 631, 634–35 (Alaska 1985))).

40. *Cf. Lashbrook v. Lashbrook*, 957 P.2d 326, 329 (Alaska 1998) ("Domestic violence proceedings and custody modification proceedings are distinct proceedings.").

41. *F.T. v. State*, 862 P.2d 857, 864 n. 13 (Alaska 1993) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).

similar issue in *F.T. v. State.*[42] There, we held that the "trial court erred in taking judicial notice of [prior] restraining orders for the purpose of establishing that [the father] had committed acts of violence in the past" in a subsequent child-in-need-of-aid proceeding.[43] We stated:

> The superior court may have meant to invoke the doctrine of issue preclusion; that doctrine is also not applicable to this case.... Whether domestic violence orders issued under [former] AS 25.35.010 or AS 25.35.020 [renumbered as AS 18.66.100 *et seq.*] can cause issue preclusion in a subsequent child in need of aid proceeding is a topic of some complexity. It is sufficient for our purposes in this opinion to state that issue preclusion in such cases would by no means be inevitable. The issue as to whether the individual in question had committed acts of domestic violence must have actually been litigated; a judgment entered by default does not qualify as actual litigation. Further, various exceptions to the rule of issue preclusion may apply in this case. None of these matters were explored in the trial court and therefore issue preclusion by reason of the domestic violence orders would have been plainly inappropriate.[44]

We believe this reasoning applies here and leads to the conclusion that the superior court's use of issue preclusion was inappropriate because the issue of domestic violence was not actually litigated in the prior protective order proceedings. The issue was not actually litigated in the 2003 restraining order proceedings because the twenty-day order was issued ex parte, without Morris's presence,[45] and the parties stipulated to extend it. Although a stipulation may be binding in that particular proceeding, it is generally accepted that "issue preclusion ordinarily does not attach [to a stipulation] unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation."[46] There is no indication in the record that Morris intended his stipulation to establish the fact of domestic violence for use in a later custody or visitation proceeding. Therefore, the doctrine of issue preclusion cannot be invoked to establish an act of domestic violence in this case.

Horn claims the court did not err because it did not rely on just the domestic violence order to find domestic violence for purposes of limiting visitation under AS 25.24.150. Horn is partly right—the court did rely on Horn's testimony and the testimony of her witnesses to find one of the incidents of domestic violence. But unless the court finds that a single act of domestic violence "caused serious physical injury," AS 25.24.150(h) requires the court to find that at least two instances of domestic violence occurred before the presumption arises in favor of supervised visitation. Here, the court independently made findings on only one instance of domestic violence; it found the second instance because it believed the 2003

**42.** 862 P.2d 857 (Alaska 1993).

**43.** *Id.* at 859, 863–64.

**44.** *Id.* at 864 n. 13 (citing Restatement (Second) of Judgments § 27 cmt. e (1982) (judgment not conclusive because issues not actually litigated) and Restatement (Second) of Judgments §§ 28(3), 28(5), 29(2), 29(5) (1982)). The exceptions we cited were: (1) "new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed"; (2) "clear and convincing need for a new determination of the issue ... because of the potential adverse impact of the determination on ... interests of persons not themselves parties to the initial action," "it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action," lack of "adequate opportunity or incentive to obtain a full and fair adjudication in the initial action"; (3) forum in "second action affords ... procedural opportunities" in "presentation and determination of the issue that were not available in the first action and could likely result" in a different determination; and (4) "prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise ... finding." *See* Restatement (Second) of Judgments §§ 28(3), 28(5), 29(2), 29(5) (1982).

**45.** *See* AS 18.66.110(a) (permitting courts to issue twenty-day protective orders ex parte and without notice under certain circumstances).

**46.** 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443 (2d ed. 2009).

domestic violence order had issue-preclusive effect.

On these facts and this record, it was error to apply the doctrine of issue preclusion to find a prior instance of domestic violence. Therefore, we reverse the visitation ruling. On remand, the court must determine whether it can make a finding that a second incident of domestic violence occurred based on the testimony and evidence presented. If the evidence does not justify such a finding, the court must reassess the restrictions placed on Morris's visitation with the parties' children.[47]

## V. CONCLUSION

For the above reasons, we REVERSE the superior court's order enforcing the original property decree, the court's child support order, and the court's visitation order. We REMAND for further proceedings consistent with this opinion.

47. The court is free to continue the existing visitation order until it reassesses the visitation restrictions.