CARNEY, Justice.
I. INTRODUCTION
A mother appeals the termination of her parental rights after she signed and then attempted to withdraw a voluntary relinquishment of parental rights. At the time she signed the relinquishment, her child was living with his paternal grandmother, who hoped to adopt him. When it later became clear that the grandmother would not be able to adopt the child, the mother signed a notice of her withdrawal of relinquishment although the ten-day window for withdrawal had passed. Three days later she filed the notice in superior court. That same day, apparently without being aware of the withdrawal notice, the court issued an order terminating the mother's parental rights. The mother appeals. She argues that the court retained discretion to allow her withdrawal even though the ten-day period had passed and that termination of her parental rights was not in the child's best interests. Because, assuming the superior court had discretion to allow the untimely withdrawal, it did not abuse its discretion by declining to do so, we affirm the termination of her parental rights.
II. FACTS AND PROCEEDINGS
A. Background
Sabrina V. is the mother of Kaleb D., who was born in 2005.[1] By 2016 Kaleb was living in Wasilla with his father, who is now deceased. Sabrina had apparently been living outside of Alaska for some years. It does not appear that the parents had a court order regarding Kaleb's custody.
Sabrina also has an older daughter, Lizzie, from a previous relationship. Lizzie was committed to the custody of the Office of Children's Services (OCS) in September 2014 in an earlier child in need of aid (CINA) case. In February 2016, after a successful six-month home visit with Sabrina in Montana, OCS released Lizzie to Sabrina.
B. Pre-Relinquishment CINA Proceedings
Kaleb's father died in April 2016; the cause of death was unknown but may have been related to complications from a recent surgery. OCS filed an emergency petition for temporary custody and to adjudicate Kaleb as a child in need of aid.[2] The petition stated that Kaleb's father had been Kaleb's "sole caregiver." OCS claimed to have "no current contact information" for Sabrina despite having released Lizzie to her roughly two *719 months earlier; Sabrina later testified that her residence had not changed between her reunification with Lizzie and the initiation of CINA proceedings for Kaleb. At the emergency probable cause hearing an OCS caseworker testified that Kaleb had told OCS he had not seen Sabrina in roughly two years and that she "wasn't a good mom." The court granted OCS temporary custody.
OCS apparently found contact information for Sabrina by June 2016.[3] In an August 2016 predisposition report[4] OCS stated that, when contacted, Sabrina had said she was unable to care for Kaleb because she was about to move from Montana to Washington. In late August the court adjudicated Kaleb in need of aid and granted OCS custody pending disposition. By September 2016 OCS had begun to investigate two of Kaleb's paternal relatives to determine if they could adopt him. Because the relatives lived in Oklahoma, OCS was working with its counterpart there pursuant to the Interstate Compact on the Placement of Children (ICPC).[5]
At the disposition hearing[6] the following month the court found that Sabrina had not yet established a relationship with Kaleb and had "made very little effort to stay in contact with him when she left Alaska." The court also found that because of Sabrina's history of drug use and involvement with OCS, it would be contrary to Kaleb's best interests to place him with her. The court committed Kaleb to OCS's custody for up to two years.[7]
Around June 2017 OCS changed the primary goal for Kaleb from reunification with Sabrina to adoption. Kaleb was then living in Oklahoma with a paternal uncle, who OCS hoped would be able to adopt him. At a permanency hearing in August, Sabrina's attorney reported that the parties had negotiated a consent to adoption.[8] Sabrina later signed the consent to adoption by Kaleb's paternal uncle, and the court approved it in January 2018.
In February 2018 OCS petitioned to terminate Sabrina's parental rights. The petition alleged that Sabrina "ha[d] not engaged in any of the identified case plan activities [or] maintained consistent contact" with OCS despite "consistently stat[ing] ... her desire to reunify" with Kaleb. In March the guardian ad litem reported that Kaleb's uncle would not be able to adopt Kaleb and that he had been moved to his paternal grandmother's home. His grandmother also lived in Oklahoma and OCS was considering her as a possible adoptive parent.
C. Proceedings Relating To The Relinquishment And Withdrawal
Sabrina signed a voluntary relinquishment of her parental rights on May 30, 2018, and filed it with the court on June 14.[9] The relinquishment acknowledged that the grandmother's adoption of Kaleb depended upon a positive home study and Kaleb's living with her for six months before the adoption; Sabrina retained the privilege to be notified if the adoption would not proceed. The relinquishment stated that Sabrina could withdraw it "for any reason" within ten days after signing it, and that after ten days the court could order her parental rights terminated at any time if it found termination to be in Kaleb's best interests. The relinquishment also provided that, after a termination order was signed but before the entry of an adoption or legal guardianship decree, Sabrina could seek a review hearing to reinstate her parental rights. The relinquishment incorporated the statutory standards governing such a review hearing: to have the termination *720 order vacated, Sabrina would have to show, by clear and convincing evidence, that reinstatement would be in Kaleb's best interests and that she had been rehabilitated from the issues that led to termination of her parental rights.[10]
In late June 2018 OCS filed a permanency report stating that Kaleb's grandmother's home was now "seen as a short-term placement given [the grandmother's] medical needs." The report explained that Oklahoma's ICPC home study had determined that her health made her unsuitable to adopt Kaleb.
Sabrina received a copy of the permanency report shortly after it was filed; this seems to have been her first notice that the grandmother would not be able to adopt Kaleb. On June 29, 2018, Sabrina signed a notice that she was withdrawing her relinquishment of parental rights. The notice stated that she had "signed the relinquishment with the understanding that the permanent plan for [Kaleb was] adoption by [his] paternal grandmother." It also stated that Sabrina "[did] not believe it [was] in [Kaleb]'s best interests to be a legal orphan" and would have withdrawn the relinquishment earlier if she had known of the grandmother's inability to provide a permanent adoptive placement.
Although Sabrina signed the Notice of Withdrawal and served it on the parties on June 29, it was not logged as filed with the court until July 2. She suggests that this was likely due to the fact that June 29, 2018, fell on a Friday, when Alaska courts and court offices closed at noon.[11] Also on July 2, and apparently without being aware of the Notice of Withdrawal, the court ordered termination of Sabrina's parental rights to Kaleb. Neither Sabrina nor her counsel was present at a hearing addressing permanency the following day, as the court had found that based on the relinquishment and termination, Sabrina was not entitled to notice of the hearing.
Sabrina moved for reconsideration on July 11. She argued that "[t]he CINA statutes do not directly speak to whether a parent can withdraw [a] relinquishment" more than ten days after signing it, but that nothing in the statutes or rules prohibited it. She urged the court to treat her withdrawal as a motion to amend a pleading, for which leave should be freely given under Alaska Civil Rule 15(a).[12] The court invited OCS and the guardian ad litem to respond; both argued that reconsideration should be denied because Sabrina's withdrawal was untimely.
On July 25, 2018, the superior court denied reconsideration. The court rejected Sabrina's argument that she should be permitted to withdraw the relinquishment under Civil Rule 15(a), noting that both AS 47.10.089(c) and the terms of the relinquishment specifically provided for a ten-day deadline to withdraw the relinquishment.[13] The court also found that the grandmother's disqualification from adopting Kaleb was not a serious change of circumstances that justified allowing late withdrawal of the relinquishment because Sabrina had only retained the right to be notified, and not the right to withdraw her relinquishment, if the adoption was not possible.
Sabrina appeals.
III. STANDARD OF REVIEW
"We review the denial of a motion *721 for reconsideration for abuse of discretion."[14] An abuse of discretion exists if the superior court's decision "is arbitrary, capricious, manifestly unreasonable, or ... stem[s] from an improper motive."[15]
"When interpreting CINA statutes and rules, we apply our independent judgment, 'adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' "[16]
IV. DISCUSSION
Sabrina argues that the superior court should have granted her motion for reconsideration of its order terminating her parental rights. She concedes that a parent "does not have the absolute right" to withdraw a relinquishment more than ten days after signing it, but she argues that after those ten days and until a termination order is issued, the superior court retains "the discretion to allow such withdrawal if it is in the child's best interests."[17] She points out that, although it was more than ten days after she signed her relinquishment, she signed and served her Notice of Withdrawal three days before the court signed the termination order. She argues that the court should have granted her motion for reconsideration both because it was not aware of her Notice of Withdrawal when it signed the termination order and because it retained jurisdiction under AS 47.10.100(a) to modify, set aside, or revoke termination of her parental rights if doing so was in Kaleb's best interests.[18]
OCS responds that Sabrina's purported withdrawal was "ineffective" because it was signed, served, and filed after the ten-day period during which she was entitled to withdraw her relinquishment. OCS argues that the relevant statutes and rules do not permit the court to allow withdrawal of a relinquishment solely on the basis of the child's best interests, without considering the parent's rehabilitation, during the period after the ten-day window and before termination. It argues that after ten days had passed Sabrina's only avenues for recourse were to obtain OCS's written consent to the withdrawal under AS 25.23.180(g) or to seek a review hearing under AS 47.10.089(h).[19] OCS also argues that Sabrina waived her arguments under AS 47.10.100(a) by failing to raise them before the superior court.[20]
A. No Rule Or Statute Clearly Governs Sabrina's Attempted Withdrawal.
Alaska Statute 47.10.089 governs voluntary relinquishments. Under subsection (c) of the statute, "[a] voluntary relinquishment may be withdrawn within 10 days after it is signed." Subsection (h) provides:
After a termination order is entered ... a person who voluntarily relinquished parental rights ... under this section may request a review hearing, upon a showing of *722 good cause, to vacate the termination order and reinstate parental rights relating to that child. A court shall vacate a termination order if the person shows, by clear and convincing evidence, that reinstatement of parental rights is in the best interest of the child and that the person is rehabilitated and capable of providing the care and guidance that will serve the moral, emotional, mental, and physical welfare of the child.[21 ]
The parties do not dispute that Sabrina's Notice of Withdrawal fell outside the ten-day period during which she retained a right of withdrawal. She signed the relinquishment on May 30, 2018, and filed it with the court on June 14; the Notice of Withdrawal is dated June 29, 2018-15 days after the relinquishment was filed. But the court did not order her parental rights terminated until July 2, 2018, three days after Sabrina signed the withdrawal notice. The certificate of service shows that the notice was faxed to OCS June 29. Sabrina's Notice of Withdrawal therefore preceded the termination order and thus does not clearly fall within AS 47.10.089(h)'s provisions for post-termination review hearings.[22]
Sabrina argues that the superior court had discretion to allow her to withdraw her relinquishment even if the ten-day period had passed. She points to AS 47.10.089(e), which provides: "Not less than 10 days after a voluntary relinquishment is signed, the court shall enter an order terminating parental rights if the court determines that termination of parental rights under the terms of the relinquishment is in the child's best interest." Sabrina contends that this section requires the court to conduct a best interests analysis prior to termination and to reinstate parental rights if doing so would serve the child's best interests. She concedes that a parent has no "absolute right" to withdraw a relinquishment after ten days, but she argues that the superior court retains "the discretion to allow such withdrawal" until a termination order is issued, and that in this case a proper exercise of its discretion would have been to grant her motion for reconsideration and hold a best interests hearing.[23] She asserts that AS 47.10.100(a) authorizes the court to do this because it states that the court retains jurisdiction for up to two years in a CINA proceeding to modify, set aside, or revoke a judgment or order based on the child's best interests.[24]
OCS argues that the court does not have discretion to allow withdrawal of a relinquishment solely based on the child's best interests, without considering the parent's rehabilitation, during the period after the ten-day window and before termination. It claims that Adoption Rule 9 and AS 25.23.180(g) govern this period, and that under these provisions a parent must either obtain consent for the withdrawal from the agency having custody of the child or establish good cause for a review hearing.[25]
The rule and statutes the parties cite do not clearly resolve this case. Even assuming that AS 47.10.089(e) permits the court to accept a late withdrawal, the subsection does not require the court to do so. Adoption Rule 9(g), meanwhile, allows a parent to "move the court to permit withdrawal of the ... relinquishment after the 10 day period pursuant to ... AS 25.23.180(g) or AS 47.10.089(h)." (Emphasis added.) But by its terms AS 47.10.089(h) applies "[a]fter a termination order is entered and before the entry of an adoption or legal guardianship decree." (Emphasis added.) And AS 25.23.180(g) explicitly limits itself to relinquishments executed under *723 AS 25.23.180 -that is, in the course of adoption rather than CINA proceedings:
Notwithstanding the provisions of (b) of this section, a relinquishment of parental rights with respect to a child, executed under this section , may be withdrawn by the parent, and a decree of a court terminating the parent and child relationship on grounds set out in (c)(1) of this section may be vacated by the court upon motion of the parent, if the child is not on placement for adoption and the person having custody of the child consents in writing to the withdrawal or vacation of the decree.[26 ]
Sabrina's relinquishment was executed under AS 47.10.089, not under AS 25.23.180, so AS 25.23.180(g) does not apply. Thus none of the rules or statutes cited by either party appear to apply to Sabrina's situation.
B. Assuming The Superior Court Had Discretion To Accept A Late Withdrawal, It Did Not Abuse Its Discretion By Declining To Do So.
We need not decide what additional hearings or procedures might have been allowable because, even assuming the superior court had the discretion to accept Sabrina's late withdrawal notice, its refusal to do so was not an abuse of discretion. Sabrina concedes that the superior court was not required to accept her withdrawal; she asserts only that under AS 47.10.089(e) and AS 47.10.100 it "had the discretion" to do so based on Kaleb's best interests. She argues that it should have exercised this discretion to hold a hearing on whether termination was in Kaleb's best interests after it became clear that his grandmother could not adopt him. We read this as an argument that the court abused its discretion by failing to hold such a hearing. OCS responds that granting her a best interests hearing would require trial courts "to conduct a mini-termination trial to decide whether the parent's withdrawal should be given effect," which would undermine the finality that the ten-day rule aims to provide.
We assume without deciding that the superior court had the discretion to grant Sabrina's motion for reconsideration and hold a hearing on whether to permit her to withdraw her relinquishment based on Kaleb's best interests. A trial court abuses its discretion if it makes a decision that "is arbitrary, capricious, manifestly unreasonable, or ... stem[s] from an improper motive."[27] Sabrina does not allege any improper motive, so we need only consider whether the superior court acted arbitrarily, capriciously, or unreasonably when it declined to reconsider its termination order or hold a best interests hearing. We conclude that it did not.
In its order denying Sabrina's motion for reconsideration, the court first found that the ten-day withdrawal deadline under AS 47.10.089(c) clearly governed Sabrina's attempt to withdraw her relinquishment. The court therefore found the withdrawal untimely. The court also emphasized that the relinquishment itself expressly incorporated this withdrawal provision, as required by statute.[28] The relevant sections of the relinquishment stated:
2. I may withdraw this relinquishment within 10 days after it is signed for any reason. I understand that the court will not sign either the order terminating my parental rights or an adoption decree sooner than ten days after I have signed this relinquishment....
3. Ten (10) or more days after I sign this relinquishment the court may enter an order terminating my parental rights if the court finds that termination of my parental rights ... is in the child's best interests.
Given this language, the court's decision to reject the withdrawal as untimely cannot be considered arbitrary or unreasonable.
In addition, the court found that the failure of the planned adoption did not provide grounds to reconsider termination, because the relinquishment expressly contemplated the possibility that the adoption might fall *724 through. The court noted that Sabrina had not retained the right to withdraw her relinquishment if Kaleb was not permanently placed with his paternal grandmother; she had only retained "the privilege to be notified if placement with [Kaleb's grandmother] no longer [was] available." The court found that OCS had complied with this term "by notifying [Sabrina] on July 23, 2018, when Oklahoma denied the home study and determined [Kaleb's grandmother] was not an appropriate permanent placement."[29]
These findings are also not arbitrary, capricious, or unreasonable; like the court's findings on the withdrawal deadline, they comport with both AS 47.10.089 and the relinquishment's language. The relinquishment stated:
The department has decided to place my child for adoption with [his paternal grandmother] in accordance with the permanency plan. The department must receive a positive home study and the child must be in the adoptive home for 6 months before the department can consent to adoption of my child.... If [his grandmother] becomes unable to care for my child for any reason, I retain the privilege to be notified that the placement is no longer available. If the placement is no longer available, the department will send me a letter by regular and certified mail to tell me that the placement is no longer available.
The relinquishment expressly acknowledged that the adoption might fail as a result of a negative home study or the grandmother's inability to care for Kaleb-as it subsequently did. While a consent to adoption would have allowed Sabrina to condition her consent on the grandmother's ability to adopt Kaleb,[30] the relinquishment was unconditional, and only retained a privilege to be notified if the adoption fell through. And as the court found, Sabrina was promptly notified via the permanency report. But even if she had not been, AS 47.10.089 provides that generally "[a] voluntary relinquishment may not be withdrawn ... on the ground that a retained privilege has been withheld from the relinquishing parent."[31] Rather, the parent must request a review hearing to seek enforcement of the retained privilege.[32] It was therefore reasonable for the superior court to conclude that the failure of the adoptive placement did not entitle Sabrina to be permitted to withdraw her relinquishment based solely on a best interests determination.
C. We Do Not Reach Sabrina's Argument That Terminating Her Parental Rights Was Not In Kaleb's Best Interests.
In her Notice of Withdrawal Sabrina asserted that she was entitled to withdraw her relinquishment because the anticipated adoption had failed and termination of her parental rights would therefore not be in Kaleb's best interest. In her briefing she urges us to treat this assertion not as a claim that the failed adoption itself allows the withdrawal-an argument that the superior court properly rejected-but as a separate, direct attack upon the court's termination order.
But by filing the relinquishment, Sabrina voluntarily removed herself from CINA proceedings relating to Kaleb. She "voluntarily relinquish[ed] to the Department of Health and Social Services ... any and all rights and responsibilities of a parent with respect to [Kaleb]." If she wished to reinsert herself in subsequent proceedings, she could only do so in the following ways: (1) by *725 withdrawing the relinquishment, either within ten days or, assuming the court could allow late withdrawal, with the court's permission;[33] (2) by attacking the validity of the relinquishment on some other ground;[34] (3) by moving to enforce an explicitly retained privilege;[35] or (4) by showing good cause for a review hearing to vacate the termination order.[36] Sabrina has done none of these. Instead she attempts to directly appeal the termination order via an argument that, under the explicit terms of the relinquishment, cannot be a basis for reinstating her parental rights: that the adoption did not take place. Unless and until she is able to resume participation in the proceedings by withdrawing or voiding her relinquishment, she has no standing to bring such a challenge. We therefore do not consider Sabrina's argument that termination of her parental rights was not in Kaleb's best interests.[37]
V. CONCLUSION
We AFFIRM the superior court's denial of reconsideration and its termination of Sabrina's parental rights.

We use pseudonyms for all family members.

See AS 47.10.142 (governing emergency custody); CINA Rule 6.

Despite this, the court's temporary custody order, issued in July 2016, found that "OCS made efforts to locate [Sabrina] but her whereabouts are unknown."

See AS 47.10.081 (requiring OCS to file predisposition report prior to disposition hearing); CINA Rule 16(a) (listing required parts of predisposition report).

Codified at AS 47.70.010.

See AS 47.10.080(c) ; CINA Rule 17.

See AS 47.10.080(c)(1).

See AS 25.23.040 -.070 (governing consents to adoption); AS 47.10.084(c) (providing that parent whose child has been placed in OCS's custody but whose parental rights have not been terminated retains right to consent to adoption).

See AS 47.10.089 (providing for voluntary relinquishment of parental rights).

See AS 47.10.089(h) (outlining requirements for review hearing to reinstate parental rights after termination based upon relinquishment).

See Press Release, Alaska Court System, Office of the Administrative Director, Beginning July 1, 2016 Court System to Close Courts Statewide on Fridays at Noon to Help Reduce Operating Costs (June 15, 2016), https://public.courts.alaska.gov/web/media/docs/fri-closure.pdf; Palmer , Alaska Court System , http://www.courts.alaska.gov/courtdir/3pa.htm (last visited Apr. 22, 2019) (listing regular Friday business hours for court in Palmer, where Sabrina filed withdrawal notice, as 8:00 a.m. to 12:00 p.m.).

Alaska R. Civ. P. 15(a) (providing that when a pleading may not be amended as a matter of course, a party may only amend it "by leave of court or by written consent of the adverse party," but that "leave shall be freely given when justice so requires").

See AS 47.10.089(c) ("A voluntary relinquishment may be withdrawn within 10 days after it is signed. The relinquishment is invalid unless the relinquishment contains the right of withdrawal as specified under this subsection.").

Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat , 307 P.3d 955, 959 (Alaska 2013).

Sharpe v. Sharpe , 366 P.3d 66, 68 (Alaska 2016) (alterations in original) (quoting Morris v. Horn , 219 P.3d 198, 203-04 (Alaska 2009) ).

Danielle A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 215 P.3d 349, 353 (Alaska 2009) (quoting Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs. , 88 P.3d 527, 529 (Alaska 2004) ).

See AS 47.10.089(c), (e).

See AS 47.10.100(a) (providing that superior court retains jurisdiction over CINA case for up to two years unless child turns 19 or case is resolved sooner, and may set aside or revoke previous judgment or order if doing so is in child's best interests).

AS 25.23.180(g) provides for withdrawal of a relinquishment "if the child is not on placement for adoption and the person having custody of the child consents in writing to the withdrawal." AS 47.10.089(h) provides that a parent who has relinquished rights may, after a termination order is issued, seek a review hearing to vacate the order upon a showing of good cause.

While Sabrina did not directly cite AS 47.10.100(a) in her motion for reconsideration, she did argue that the superior court had the authority to allow her to withdraw her relinquishment under a different provision, Alaska Civil Rule 15(a), which governs amendment of pleadings. Alaska R. Civ. P. 15(a). But as we discuss below, even assuming that this argument is properly raised on appeal and that AS 47.10.100(a) would allow the court to permit late withdrawal of a relinquishment, the court did not abuse its discretion by declining to do so here.

AS 47.10.089(h). We note that had the termination order been signed prior to service of Sabrina's withdrawal, this provision would clearly govern this case.

See Alaska Adopt. R. 9(g) (providing that notification of withdrawal of a consent to adoption or relinquishment may be provided to "the court[ ] or the person or agency obtaining the consent or relinquishment").

See AS 47.10.089(c), (e).

See AS 47.10.100(a) (providing that superior court retains jurisdiction over CINA case for up to two years unless child turns 19 or case is resolved sooner, and may set aside or revoke previous judgment or order if doing so is in child's best interests).

See Alaska Adopt. R. 9(g); AS 25.23.180(g) ; AS 47.10.089(h).

AS 23.25.180(g) (emphasis added).

Sharpe v. Sharpe , 366 P.3d 66, 68 (Alaska 2016) (alterations in original) (quoting Morris v. Horn , 219 P.3d 198, 203-04 (Alaska 2009) ).

See AS 47.10.089(c) (providing that a relinquishment is invalid unless it "contains the right of withdrawal as specified under this subsection").

The superior court's finding that July 23, 2018, was the date OCS notified Sabrina of the failed adoption appears to be based on OCS's response to Sabrina's motion for reconsideration, in which it stated that it had sent her a letter on July 23 with the results of Oklahoma's ICPC home study. We note, however, that Sabrina actually received notice via the permanency report, which was sent to her on June 27, 2018, two days after OCS received the ICPC home study results. This apparent error does not render clearly erroneous the court's ultimate finding that Sabrina was promptly notified.

See AS 25.23.040(a) (providing for written consent to be given to "a particular adoption").

AS 47.10.089(f).

AS 47.10.089(g). Alaska Civil Rule 60(b) provides certain exceptions to this general rule, but as Sabrina has not contested the relinquishment on any of the grounds set forth in Rule 60(b), we do not address them here.

See AS 47.10.089(c).

See, e.g. , Alaska R. Civ. P. 60(b) (allowing motions for relief from judgment on grounds such as mistake, newly discovered evidence, and fraud).

See AS 47.10.089(g).

See AS 47.10.089(h).

Although we reject Sabrina's attempt to challenge the termination order, we note the absence of explicit best interest findings in that order. We emphasize that AS 47.10.089(e) requires the court to "determine[ ] that termination of parental rights under the terms of the relinquishment is in the child's best interests" before issuing a termination order, and we remind trial courts of the obligation to make findings adequate to support meaningful appellate review. See, e.g. , Borchgrevink v. Borchgrevink , 941 P.2d 132, 139 (Alaska 1997).